**Electronically Filed
Intermediate Court of Appeals
29020
21-APR-2011
09:28 AM**

NOS. 29020 and 29069

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
DARREL LLOYD JARMUSCH, Defendant-Appellant.
(CR NOS. 07-1-0001 and 01-1-0034)


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Leonard and Ginoza, JJ.)

Defendant-Appellant Darrel Lloyd Jarmusch (Jarmusch)
appeals from the Judgment of Conviction and Sentence in Criminal
No. 07-1-0001 entered by the Circuit Court of the Fifth Circuit
(Circuit Court) on February 15, 2008.[1]  Following a jury trial,
Jarmusch was convicted of Obstructing Government Operations in
violation of Hawaii Revised Statutes (HRS) § 710-1010[1](a)
(Supp. 2010) and Harassment in violation of HRS § 711-1106(1)(b)
(1993).  Jarmusch also appeals the Circuit Court's February 25,
2008 order granting the State's Motion for Revocation of
Jarmusch's Deferred Acceptance of No Contest (DANC) plea in
Criminal No. 01-1-0034.  Both appeals were consolidated by this
court.

---

[1]     The Honorable Kathleen N. A. Watanabe presided in Criminal No. 07-1-
0001 and in regards to the revocation of the DANC in Criminal No. 01-1-0034.

On appeal, Jarmusch alleges the following points of error: (1) the Circuit Court erred by denying Jarmusch the right to counsel and ordering him to proceed to trial *pro se*; (2) the Circuit Court erred in adopting, without review, the Public Defender's erroneous determination that Jarmusch did not qualify for the services of appointed counsel because Jarmusch owned his residence, even after learning that Jarmusch lost his job before trial; (3) the Circuit Court erred by concluding that excluded time periods set forth in Rule 48(c) of the Hawai'i Rules of Penal Procedure (HRPP) (2000) had been established without first making appropriate findings of fact; and (4) the Circuit Court committed plain error when it set aside the DANC plea in Criminal No. 01-1-0034 based on the allegedly improper convictions in Criminal No. 07-1-0001.

Based upon our careful review of the record, the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we vacate the Judgment of Conviction and Sentence in Criminal No. 07-1-0001, the order denying Jarmusch's HRPP 48 motion in Criminal No. 07-1-0001, and the order granting the State's Motion for Revocation of Jarmusch's DANC plea in Criminal No. 01-1-0034. We remand for further proceedings.

## I. Right to Counsel Issues

### A. Waiver of Counsel

Jarmusch asserts on appeal that he was required to proceed *pro se* even though he consistently asserted his right to counsel and he never asserted a right to proceed *pro se*. As more accurately reflected in the record, throughout the proceedings below, Jarmusch insisted that he wanted to represent himself with the "assistance" of counsel. In short, Jarmusch was insisting on standby or hybrid counsel. See State v. Mundon, 121 Hawai'i 339, 219 P.3d 1126 (2009); State v. Hirano, 8 Haw. App. 330, 802 P.2d

482 (1990). With regard to Jarmusch's assertion on appeal that he had the right to such counsel, we disagree.

"Both federal and state courts have uniformly held that there is no sixth amendment right to hybrid representation, but the matter is within the discretion of the court." Hirano, 8 Haw. App. at 334, 802 P.2d at 484. This court therefore held in Hirano that "in concert with the weight of authority" any right to appear *pro se* "does not include the right to hybrid representation." Id. at 336, 802 P.2d at 485. Instead, "[s]uch representation is in the discretion of the trial court." Id.

Although the Circuit Court was not obligated to allow Jarmusch to have hybrid counsel, and Jarmusch continually asserted he did not want to be "represented" by counsel, the court was obligated to ensure a proper waiver of counsel before Jarmusch proceeded *pro se*.[2] "The right to counsel is waivable when it is voluntarily and intelligently undertaken." State v. Merino, 81 Hawai'i 198, 219, 915 P.2d 672, 693 (1996) (internal quotation marks and citation omitted).

> [W]aiver is a question that requires application of constitutional principles to the facts as found. Accomplishment of this task requires us to examine the entire record and make an independent determination of the ultimate issue based upon that review and the totality of the circumstances. Thus, we apply a de novo standard of appellate review to the ultimate issue of the voluntariness, knowledge, and intelligence of a waiver.

Id. at 220, 915 P.2d at 694 (brackets and ellipses omitted) (quoting State v. Hoey, 77 Hawaii 17, 32, 881 P.2d 504, 519 (1994)).

---

[2] In this case, the Circuit Court on several occasions encouraged and allowed time for Jarmusch to apply for services with the Office of the Public Defender or to retain counsel, but Jarmusch did not secure counsel throughout the pretrial and trial proceedings. Instead, he did ultimately represent himself before the Circuit Court.

3

In <u>State v. Dickson</u>, 4 Haw. App. 614, 673 P.2d 1036, (1983), this court set out the following framework:

The trial court is initially charged with the function of assuring that the defendant's waiver of counsel is made knowingly and intelligently and that the record is complete so as to reflect that waiver.

The trial court should first examine the particular facts and circumstances relating to the defendant, such as the defendant's age, education, mental capacity, background and experience, and his conduct at the time of the alleged waiver. This is necessary to allow the trial court to determine the level and depth to which its explanation and inquiry must extend.

Secondly, in order to fully assure that the defendant is informed of the risks of self-representation, the trial court should make him aware of the nature of the charge, the elements of the offense, the pleas and defenses available, the punishments which may be imposed, and all other facts essential to a broad understanding of the whole matter.

Finally, the trial court should inform the defendant: of his right to counsel, whether private or appointed; that self-representation is detrimental to himself; that he will be required to follow all technical rules and substantive, procedural, and evidentiary law; that the prosecution will be represented by able counsel; that a disruption of the trial could lead to vacation of the right to self-representation; and that if voluntary self-representation occurs, the defendant may not afterward claim that he had inadequate representation.

The trial judge is not required to give the defendant a short course in criminal law and procedure, since a defendant's technical legal knowledge is not relevant to an assessment of his knowing exercise of the right to defend himself. However, the record should reflect some interchange on the above matters such as will indicate to a reviewing court that the defendant knew and understood the dangers and disadvantages of self-representation.

Those matters, which we shall call here "specific waiver inquiry" factors, provide a guideline for the trial court in dealing with a demand for waiver of counsel. The record need not reflect a discussion between the court and a defendant illuminating every such factor. However, where the record fails to reflect that the trial court has sufficiently examined the defendant so as to establish that he is aware of the dangers and disadvantages of self-representation, or that the defendant has made a knowing and intelligent waiver, an appellate court will be hard-pressed to find that a defendant has

4

> effectively waived counsel. In such situations, the
> conviction of a pro se criminal defendant is
> vulnerable to reversal unless the record also contains
> overwhelming circumstantial evidence indicating that
> the requirements for a knowing and intelligent waiver
> have otherwise been met.

Id. at 619-621, 673 P.2d at 1041-1042 (citations and footnote omitted).

Here, based on our review of the record, in the later stages of the proceedings, the Circuit Court did address some of the Dickson waiver inquiry factors with Jarmusch.[3] However, even then the Circuit Court did not make any inquiry as to Jarmusch's age, education, mental capacity, background or experience with the judicial system; and the Circuit Court did not advise Jarmusch of the elements of the charges, the pleas and defenses available, that a disruption of the trial could lead to vacation of the right to self-representation, and that if he proceeded pro se he may not afterward claim that he had inadequate representation.

Although not every Dickson factor need be discussed between the court and a defendant, we conclude there was not sufficient examination of Jarmusch to establish he was aware of "the dangers and disadvantages of self-representation, or that [he] has made a knowing and intelligent waiver." 4 Haw. App. at 621, 673 P.2d at 1042 (citations omitted). Further, although at times Jarmusch appeared somewhat sophisticated in the legal process, he also appeared legitimately confused in other instances. Thus, like in Dickson, we hold "there is insufficient circumstantial evidence in the record to convince this court that [Jarmusch] actually knew what he was doing." Id. at 622, 673 P.2d at 1043.

---

[3] The Circuit Court discussed with Jarmusch the charges against him, the penalties for the charges, the Circuit Court's procedural rules, trial procedure, and that the deputy prosecutor had the benefit of legal training.

We therefore conclude that Jarmusch did not knowingly and intelligently waive his right to counsel, and we vacate his convictions in Criminal No. 07-1-0001.

B.   **Qualification for Services From the Public Defender**

Jarmusch also contends the Circuit Court erred in not reviewing the Office of the Public Defender's determination that he did not qualify for appointed counsel because he owned his residence.  We need not reach this question.  Throughout the proceedings below, Jarmusch expressed that he wanted hybrid counsel and that he did not want to be "represented" by an attorney.  The Office of the Public Defender stated on the record that the office does not provide hybrid or standby counsel, and as noted above, such counsel is not constitutionally required. Hirano, 8 Haw. App. at 334, 802 P.2d at 484.  Therefore, for this reason alone, the Circuit Court was not required to consider whether Jarmusch qualified from a financial perspective for appointed counsel.

II.  **Speedy Trial Motion**

Jarmusch filed a motion pursuant to HRPP 48 asserting that his rights to a speedy trial had been violated and that the charges against him should be dismissed.  At the time Jarmusch filed his motion on November 27, 2007, it had been more than six months since his arrest on November 28, 2006.[4]   In State v. Hutch, 75 Haw. 307, 861 P.2d 11 (1993), the Hawai'i Supreme Court explained that:

> An HRPP 48(b) motion to dismiss, by its very nature, involves factual issues.  Pursuant to the rule, a defendant may move to dismiss the charges against him or her if trial is not commenced within six months (construed as one hundred eighty days) from the events enumerated within its provisions.  HRPP 48(c) mandates that the court exclude certain time periods from its computation in determining whether the one hundred eighty days have run.  Before the

---

[4]  The date of arrest is the triggering date for this case, where bail was set.  See HRPP 48(b)(1).

> court may conclude as a matter of law that any of the
> excluded time periods set forth in HRPP 48(c) have been
> established, it must first make the appropriate FOF.

75 Haw. at 330-31, 861 P.2d at 23. Because in Hutch the trial courts had denied the defendant's motions to dismiss under HRPP Rule 48 without stating their "essential findings on the record," the Hawai'i Supreme Court vacated the orders denying the motions and remanded for entry of appropriate findings of fact. Id. at 331, 861 P.2d at 23.

In this case, as pointed out by Jarmusch, the Circuit Court did not make findings of fact on the record in denying his HRPP Rule 48 motion to dismiss, which was heard on the same day it was filed. Likewise, the Circuit Court's December 5, 2007 "Order Denying Defendant's Motion to Dismiss Charges With Prejudice for State's Violation of Defendant's Right to Speedy Trial (Rule 48) filed on November 27, 2007" (Order Denying HRPP 48 Motion To Dismiss) did not contain any findings of fact. Therefore, there are no findings of fact to support the Circuit Court's necessary conclusion that there are excluded time periods under HRPP 48(c).

Pursuant to Hutch, the Circuit Court erred in not making appropriate findings of fact as to excluded time periods to support its denial of Jarmusch's HRPP 48 motion to dismiss. We therefore vacate the Circuit Court's Order Denying HRPP 48 Motion To Dismiss, filed on December 5, 2007, and remand for further proceedings on this motion.

On remand, because Jarmusch initially filed the HRPP 48 motion when he was acting *pro se*, the Circuit Court shall allow Jarmusch to re-file or supplement his HRPP 48 motion to dismiss after appropriate steps are taken regarding his right to counsel or there is a knowing and intelligent waiver of counsel. Thereafter, the Circuit Court shall enter appropriate findings of fact and a further order on the HRPP 48 motion.

7

### III. Revocation of DANC Plea in Criminal No. 01-1-0034

Following Jarmusch's conviction in Criminal No. 07-1-0001, the Circuit Court granted the State's motion for revocation of a DANC plea previously granted to Jarmusch in Criminal No. 01-1-0034. Although the State's motion for revocation of the DANC plea was initially filed based on Jarmusch's arrest in Criminal No. 07-1-0001, the Circuit Court made clear that its order revoking the DANC plea was based on the convictions in Criminal No. 07-1-0001. Because we vacate the convictions in Criminal No. 07-1-0001, we also vacate the Circuit Court's order granting revocation of the DANC plea in Criminal No. 01-1-0034.

### IV. Conclusion

For the foregoing reasons, we vacate: (a) the Judgment of Conviction and Sentence filed February 15, 2008 in Criminal No. 07-1-0001; (b) the Order Denying HRPP 48 Motion to Dismiss filed on December 5, 2007 in Criminal No. 07-1-0001; and (c) the "Order Granting Motion For Revocation of Deferred Acceptance of No Contest Plea Filed on June 22, 2007" in Criminal No. 01-1-0034, entered on February 25, 2008. We remand for further proceedings in both Criminal No. 07-1-0001 and Criminal No. 01-1-0034 consistent with this Summary Disposition Order.

DATED: Honolulu, Hawaiʻi, April 21, 2011.

On the briefs:

Charles A. Foster
for Defendant-Appellant

Tracy Murakami
Deputy Prosecuting Attorney
County of Kauai
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

8